[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 08-15472
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUNE 26, 2009
THOMAS K. KAHN
CLERK

D. C. Docket No. 07-01232-CV-ORL-22-GJK

TRESTON HOLLINGER,

Petitioner-Appellant,

versus

SECRETARY DEPARTMENT OF CORRECTIONS,
FLORIDA ATTORNEY GENERAL,

Respondents-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(June 26, 2009)

Before CARNES, HULL and WILSON, Circuit Judges.

PER CURIAM:

Treston Hollinger, a Florida state prisoner proceeding pro se, appeals the dismissal of his habeas corpus petition, 28 U.S.C. § 2254, as untimely. We granted a certificate of appealability on "[w]hether the district court erred in finding that Hollinger was not entitled to equitable tolling because he failed to establish a causal connection between the state court's failure to notify him of an appellate decision and his failure to timely file his § 2254 petition." After review, we vacate the district court's dismissal and remand for further proceedings consistent with this opinion.

## I. BACKGROUND

### A. Direct Appeal

In March 2003, a jury convicted Hollinger of robbery with a weapon. Because Hollinger was a habitual violent felony offender, the Florida trial court sentenced him to life imprisonment. On June 8, 2004, the Florida appellate court affirmed the conviction and sentences. On July 23, 2004, rehearing was denied.

Under AEDPA,[1] Hollinger's conviction became "final" on October 21, 2004—90 days after rehearing was denied on direct appeal. See Bond v. Moore, 309 F.3d 770, 773–74 (11th Cir. 2002) (explaining that a judgment becomes "final" on the date on which the U.S. Supreme Court issues a decision on the merits of petitioner's direct appeal or denies certiorari, or after the expiration of the

---

[1]The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214.

90 days in which petitioner could file such a petition). AEDPA's one-year statute of limitations for § 2254 petitions thus began to run on October 21, 2004, when Hollinger's conviction became final. See 28 U.S.C. § 2244(d)(1).

## B. State Collateral Proceedings

On February 9, 2005, Hollinger signed and submitted a state habeas petition alleging ineffective assistance of counsel. Between October 21, 2004, and February 9, 2005, 111 days ran on Hollinger's AEDPA clock. On March 9, 2005, the Florida Supreme Court denied Hollinger's state habeas petition. From February 9 to March 9, 2005, Hollinger's AEDPA clock was tolled. See 28 U.S.C. § 2244(d)(2) (stating that a "properly filed application for State post-conviction or other collateral review" tolls the AEDPA limitations period while the state application is pending).

Hollinger's AEDPA clock then ran another 13 days from March 10 to March 22, 2005, for a total of 124 days. It stopped again on March 22, 2005, when Hollinger signed and submitted a Florida Rule of Criminal Procedure 3.850 motion for post-conviction relief in state court. On May 17, 2005, the state court issued an order denying Hollinger's Rule 3.850 motion and stating that the order was mailed to Hollinger. However, at this motion to dismiss stage, the government has not disputed Hollinger's contention that he did not learn of the May 17, 2005, order

3

(denying his Rule 3.850 motion) until February 1, 2006.[2]

Hollinger did not appeal the denial of his Rule 3.850 motion at that time. Thus, his AEDPA clock began to run again on June 16, 2005 (30 days after the May 17, 2005 order).  See Fla. R. Crim. P. 3.850(g) (providing movant 30 days to timely appeal all orders denying motion for post-conviction relief).[3]  As of June 16, 2005, Hollinger had 241 days, or until February 13, 2006, left on his AEDPA clock.

On January 13, 2006, before his AEDPA clock ran out on February 13, 2006, Hollinger wrote the state clerk of court inquiring about his Rule 3.850 motion.  On February 1, 2006, Hollinger received from Maryanne Morse, Clerk of Court, a copy of the May 17, 2005, order denying his Rule 3.850 motion.  On February 1, 2006, Hollinger still had 12 days left on his AEDPA clock.  Although Hollinger filed, and was granted, a motion for a belated 3.850 appeal, he did not file a state or federal pleading between February 1–12, 2006.  Thus, Hollinger's

---

[2]In response to the government's motion to dismiss his § 2254 petition, Hollinger submitted four exhibits, including: (1) the mail log showing that he received no legal mail between May 17, 2005, and February 1, 2006; and (2) his January 13, 2006, inquiry to the clerk of clerk regarding the status of his Rule 3.850 motion.

[3]The district court properly added a 30-day period of statutory tolling after the May 17, 2005, order denying Hollinger's Rule 3.850 motion for the 30 days that he had to appeal that order under Florida law.  Under AEDPA, the one-year limitations period is tolled for "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending."  28 U.S.C. § 2244(d)(2).  A state post-conviction or collateral motion remains "pending," and thus tolls under § 2244(d)(2), for the time during which the petitioner could have appealed the denial of such motion, even if the petitioner did not file an appeal.  See Cramer v. Sec'y, Dep't of Corr., 461 F.3d 1380, 1383 (11th Cir. 2006) (addressing Fla. R. Crim. P. 3.800 motion).

AEDPA clock ran out on February 13, 2006.

## C.  April 21, 2006, Motion for Belated Rule 3.850 Appeal

Hollinger requested the prison mail room log to show he had not received any legal mail between May 17, 2005 and February 1, 2006.  On April 21, 2006, Hollinger filed a motion for belated appeal of the denial of his Rule 3.850 motion, which the state court granted.  Because Hollinger's AEDPA clock already had expired on February 13, 2006, his belated Rule 3.850 appeal did not statutorily toll the AEDPA limitations period.  See Moore v. Crosby, 321 F.3d 1377, 1381 (11th Cir. 2003) (concluding that Rule 3.850 motion, "filed after expiration of the limitations period[,] does not relate back so as to toll idle periods preceding the filing of the federal [habeas] petition"); Tinker v. Moore, 255 F.3d 1331, 1333 (11th Cir. 2001) (explaining that where a Rule 3.850 motion is filed after the expiration of the one-year period, it does not toll the period under § 2244(d)(2) because no period remains to be tolled).[4]

## D.  Decision on Belated Rule 3.850 Appeal

[4]The Supreme Court recently construed § 2244(d)(1)(A), which defines the starting date for AEDPA's one-year limitations period as "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review."  28 U.S.C. § 2244(d)(1)(A).  In Jimenez v. Quarterman, — U.S. —, 129 S. Ct. 681, 685 (2009), the Supreme Court concluded that direct review cannot conclude for purposes of § 2244(d)(1)(A) until the "availability of direct appeal to the state courts" is exhausted.  Id. (quotation marks and citation omitted).  "[W]here a state court grants a criminal defendant the right to file an out-of-time direct appeal during state collateral review, but before the defendant has first sought federal habeas relief, his judgment is not yet 'final' for purposes of § 2244(d)(1)(A)."  Id. at 686. Because Hollinger's belated appeal was not a direct appeal of his conviction, Jimenez does not affect the calculation of Hollinger's AEDPA clock.

On November 17, 2006, the state appellate court affirmed the denial of Hollinger's Rule 3.850 motion on all but one ground, which was remanded to the state trial court for consideration because that court inadvertently failed to address it. The state trial court subsequently denied Hollinger Rule 3.850 relief, and the state appellate court affirmed on June 5, 2007.

## E. § 2254 Federal Habeas Petition

On July 27, 2007, Hollinger filed his § 2254 petition. Of course, his AEDPA clock ran out on February 13, 2006, making his § 2254 petition 528 days too late. His belated 3.850 appeal proceedings ran from April 21, 2006, to June 5, 2007, which consumed a significant part of the 528 days. Thus, Hollinger needs equitable tolling simply for the time during which the state court failed to notify him of the May 17, 2005, order denying his Rule 3.850 motion.

The district court dismissed the § 2254 petition and rejected Hollinger's claim of equitable tolling. The district court noted that, "[w]hen Petitioner learned that his Rule 3.850 motion had been denied, twelve days [February 1–13, 2006] remained in which Petitioner could have timely filed the instant habeas petition." Dist. Ct. Order at 6. The district court found that Hollinger "has not demonstrated that a causal connection existed between the state court's failure to notify him of the disposition of his Rule 3.850 motion and his ability to timely file the instant habeas petition." Id. Hollinger appealed.

6

## II. DISCUSSION

Hollinger argues that he is entitled to equitable tolling for the period from June 16, 2005, 30 days after the state court denied his Rule 3.850 motion, until February 1, 2006, the day Hollinger learned that the state court had denied his Rule 3.850 motion.[5] That equitable tolling, combined with the statutory tolling that would have occurred had Hollinger's AEDPA clock not expired on February 13, 2006, would make his July 27, 2007, federal § 2254 petition timely under AEDPA.

AEDPA's one-year statute of limitations may be equitably tolled when a petitioner shows "'extraordinary circumstances that are both beyond his control and unavoidable even with diligence.'" Drew v. Dep't of Corr., 297 F.3d 1278, 1286 (11th Cir. 2002) (quoting Sandvik v. United States, 177 F.3d 1269, 1271 (11th Cir. 1999)); see Diaz v. Sec'y for the Dep't of Corr., 362 F.3d 698, 701 (11th Cir. 2004). Equitable tolling is extraordinary and applied "sparingly." Downs v. McNeil, 520 F.3d 1311, 1318 (11th Cir. 2008); Drew, 297 F.3d at 1286; Steed v. Head, 219 F.3d 1298, 1300 (11th Cir. 2000). Equitable tolling "is limited to rare and exceptional circumstances, such as when the State's conduct prevents the petitioner from timely filing." Lawrence v. Florida, 421 F.3d 1221, 1226 (11th Cir. 2005). "'A determination as to whether rare and exceptional circumstances

---

[5]We review de novo the district court's decision to deny equitable tolling. Drew v. Dep't of Corr., 297 F.3d 1278, 1283 (11th Cir. 2002). However, we review a district court's determination of the relevant facts for clear error. Id.

are presented requires the examination of the facts in each case.'" Spottsville v. Terry, 476 F.3d 1241, 1245 (11th Cir. 2007) (quoting Arthur v. Allen, 452 F.3d 1234, 1253 (11th Cir. 2006)). The petitioner bears the burden of showing that equitable tolling is warranted. Id.

Hollinger argues that the state court's 8-month delay in notifying him of the May 17, 2005, order (denying his Rule 3.850 motion) constitutes extraordinary circumstances sufficient to justify equitable tolling. This lengthy delay may provide a basis for equitable tolling "if the petitioner has diligently attempted to ascertain the status of that order and if the delay prevented the inmate from filing a timely federal habeas corpus petition." Drew, 297 F.3d at 1288 (stating that "[a] lengthy delay between the issuance of a necessary order and an inmate's receipt of it might provide a basis for equitable tolling if the petitioner has diligently attempted to ascertain the status of that order and if the delay prevented the inmate from filing a timely federal habeas corpus petition" (emphasis added)).[6]

Here, the district court did not make an explicit finding about Hollinger's diligence. The district court noted that Hollinger contacted the state court about his

---

[6]In Drew, this Court affirmed the district court's denial of equitable tolling to a petitioner who claimed that he did not receive a copy of the district court's order dismissing his initial § 2254 petition without prejudice until a year-and-a-half after it was issued. Drew, 297 F.3d at 1286–91. The Court's review was focused on whether the district court's fact finding that the petitioner did not act diligently was clear error. See id. at 1287 ("The record before this court does not support a determination that the magistrate judge or the district court clearly erred in finding Drew dilatory."). Because the district court did not make a fact finding as to whether Hollinger was diligent, we do not find Drew instructive here.

post-conviction motion earlier than other petitioners who benefited from equitable tolling but that Hollinger waited two months to file his motion for a belated 3.850 appeal. Instead of resolving the diligence question, the district court focused on whether the state court's delay prevented Hollinger from timely filing his federal habeas petition under AEDPA. The district court found that Hollinger had not shown a causal connection between the state court's delay and "his ability to timely file the instant habeas petition." Dist. Ct. Order at 6 (emphasis added). The district court focused solely on the undisputed fact that, when Hollinger received the February 1, 2006, notification of the order, "twelve days remained in which Petitioner could have timely filed the instant habeas petition." Id. (emphasis added).

Before discussing Hollinger's claims, we review our precedent in Knight v. Schofield, 292 F.3d 709 (11th Cir. 2002), because it is the closest case we can find on point. In Knight, we reversed the district court's denial of equitable tolling where the Georgia Supreme Court failed to notify the petitioner that it had denied his application for discretionary review of his state habeas petition. 292 F.3d at 711–12. When the petitioner filed his application for discretionary review, he asked the clerk of the Georgia Supreme Court when he could expect a ruling. Id. at 710. The clerk assured him that he "would be notified as soon as a decision was issued." Id. This is not surprising as courts routinely send copies of rulings to the

9

parties in the case. On September 9, 1996, the Georgia Supreme court denied petitioner Knight's application. Id. However, the clerk inadvertently sent notice of the Georgia Supreme Court's September 9, 1996, denial of the petitioner's application to the wrong person. Id. And Knight waited until January 16, 1998, before inquiring about the status of his application. Id. On March 4, 1998, nearly two months later, the Georgia Supreme Court advised Knight that his application had been denied 18 months earlier on September 9, 1996. Id. On August 14, 1998, five months later, Knight filed his § 2254 petition. Id.

In reversing the district court's denial of equitable tolling, this Court noted that "[u]ntil the clerk responded, Knight had no way of knowing that his state remedies had been exhausted." Id. at 711. Because "[t]he law is clear that he could not file a federal motion until his pending state application was denied," the Court concluded that the petitioner Knight "had every reason to delay" in filing his § 2254 petition "until he knew that state relief had been denied." Id.

In light of Knight, there are several problems with the district court's analysis. First, assuming Hollinger's allegations are true, as the district court did, the state court's 8-month delay in providing Hollinger notice of its denial of his Rule 3.850 motion eroded nearly two-thirds of Hollinger's one-year limitations period and left Hollinger only 12 days on his AEDPA clock. Contrary to what the district court said, Hollinger could not go to federal court immediately to file his

10

§ 2254 petition after receiving the Rule 3.850 court's order because he first had to pursue a belated Rule 3.850 appeal in order to exhaust state remedies. <u>Knight</u>, 292 F.3d at 711 ("The law is clear that [the petitioner] could not file a federal motion until his pending state application was denied. 28 U.S.C. § 2254(b)–(c). Therefore, he had every reason to delay such filing until he knew that state relief had been denied.").

Furthermore, due to the 8-month delay in receiving the Rule 3.850 court's order, Hollinger was left with only 12 days to (1) review the Rule 3.850 court's order, (2) prepare and file a motion explaining the need for a belated Rule 3.850 appeal, (3) prepare and file his Rule 3.850 appellate brief, (4) obtain a ruling on his Rule 3.850 appeal, and (5) prepare and file his § 2254 petition. Upon learning of the May 17, 2005, order on February 1, 2006, Hollinger lacked the usual 30 days to prepare and file a Rule 3.850 appeal, much less enough time to obtain a ruling from the state appellate court within such a truncated time period. Thus, the state court's 8-month delay effectively prevented Hollinger from timely filing his § 2254 petition. The district court erred in concluding there was no causal connection between the 8-month delay and Hollinger's untimely § 2254 petition.[7]

---

[7]As in <u>Knight</u>, we do not rule that every delay in filing will warrant equitable tolling. <u>See</u> Knight, 292 F.3d at 711 (noting that "not in every case will a prisoner be entitled to equitable tolling until he receives notice. Each case turns on its own facts."). We say only that equitable tolling may be proper here where the 8-month delay in notifying Hollinger of the Rule 3.850 trial court's ruling left him only 12 days to file his § 2254 petition. This is not a case where the state appellate court had affirmed the state trial court's denial of a 3.850 motion and all the petitioner had left to do was file a § 2254 petition. Here, the notification delay involved a trial level 3.850

11

The question, however, remains whether Hollinger acted diligently. Hollinger emphasizes that he acted diligently because: (1) he inquired about the status of his Rule 3.850 motion much sooner than the petitioner in Knight; (2) he has an I.Q. of 76 to 80 and functions on a fifth-grade level; (3) he is entirely dependent on inmate law clerks' assistance (and thus their schedules); (4) he filed his motion for a belated appeal approximately two months after he learned of the Rule 3.850 court's order; and (5) he needed the mail room log showing that he had not received any legal mail between May 17, 2005, and February 1, 2006, before he could file his motion for a belated 3.850 appeal, which the state court granted. We express no opinion as to whether Hollinger acted diligently and leave this to the district court to address in the first instance after both sides have an adequate opportunity to present their arguments. See Drew, 297 F.3d at 1287 (stating that "the determination of whether a party was diligent is a finding of fact, subject to review for clear error"); see also Downs, 520 F.3d at 1323 ("We have held on previous occasions that '[d]ue diligence . . . does not require a prisoner to undertake repeated exercises in futility or to exhaust every imaginable option, but rather to make reasonable efforts.'" (quoting Aron v. United States, 291 F.3d 708, 712 (11th Cir. 2002))); Knight, 292 F.3d at 711 (concluding that a "pro se imprisoned defendant . . . exercised diligence in inquiring about" his state habeas

---

ruling that the petitioner still had to exhaust through the state appellate system before he could file his § 2254 petition.

12

petition that had been denied eighteen months earlier, even though he waited five months after being notified to file his § 2254 petition).

## III. CONCLUSION

In sum, we conclude that the district court clearly erred in finding that Hollinger failed to show a causal connection between the Rule 3.850 court's delay in providing Hollinger a copy of its order and Hollinger's untimely filing of his § 2254 petition. Because this was the district court's only fact finding, we vacate and remand for the district court to reconsider Hollinger's equitable tolling argument in light of this order and to make other necessary factual findings, including, but not limited to, when Hollinger first received notice of the Rule 3.850 court's May 17, 2005 order and whether Hollinger acted diligently.

**VACATED AND REMANDED.**