WILSON, Circuit Judge,
dissenting:
Attorney Michael Steven Goodman caused Earnest Cadet to be late in filing a federal habeas petition, and Cadet asks for extra time to file his petition. The Supreme Court instructs us that, in determining whether to grant extra time to file *1238 a federal habeas petition, we must avoid the imposition of a mechanical rule and consider on a case-by-case basis any attorney misconduct that exceeds garden-variety negligence. Goodman’s misconduct exceeded garden-variety negligence and compels a case-specific inquiry into whether we should grant Cadet extra time to file a federal habeas petition. Disregarding the Supreme Court’s instruction, the Majority imposes a mechanical rule and denies Cadet this case-specific inquiry. First the Majority imposes the rule that attorney negligence, even gross negligence, alone can never justify granting extra time to file a federal habeas petition. Then the Majority declares that Goodman’s misconduct constituted negligence and denies Cadet the extra time.
I welcome the Majority’s revisions, including the clarification that an attorney’s abandonment of a client is not the only reason for equitably tolling the limitations period for a federal habeas petition.[1] However, I cannot join the Majority in concluding — in defiance of Holland v. Florida, 560 U.S. 631, 130 S.Ct. 2549, 177 L.Ed.2d 130 (2010) — that attorney negligence alone can never justify equitably tolling the limita-tiohs period. And I cannot join the Majority in ultimately declining to equitably toll the limitations period for Cadet. I respectfully dissent.
I
I cannot join the Majority’s opinion that attorney negligence alone can never justify equitably tolling the limitations period. The Majority’s opinion is not this circuit’s first attempt to promulgate this rule: in 2008, we announced the same in Holland v. Florida, 539 F.3d 1334 (11th Cir. 2008) (per curiam). Rejecting the rule, the Supreme Court stated:
In the Court of Appeals’ view, ... [an] attorney’s unprofessional conduct, ... even if it is “negligent” or “grossly negligent,” cannot ... warrant equitable tolling unless the petitioner offers “proof of bad faith, dishonesty, divided loyalty, mental impairment or so forth.” In our view, this standard is too rigid. We therefore reverse the judgment of the Court of Appeals and remand for further proceedings.
Holland, 560 U.S. at 634-35, 130 S.Ct. at 2554 (citations omitted). Rather than accept the Supreme Court’s judgment, the Majority pronounces this rule once again.
The Majority quibbles with the Holland majority and applauds and adopts the Holland concurrence that agreed in part with this circuit’s Holland decision. In order to justify adopting a concurrence over the Supreme Court’s controlling opinion, the Majority relies on a citation to the Holland concurrence in Maples v. Thomas, 565 U.S. 266, 132 S.Ct. 912, 181 L.Ed.2d 807 (2012), a subsequent Supreme Court decision. The Majority concludes that Maples, by citing the Holland concurrence, implicitly overruled the Holland majority. In other words, the Majority declares that *1239 this circuit’s holding in Holland was right all along.
The Majority’s holding contravenes the Supreme Court’s instruction against construing one of its opinions as “implicitly overrul[ing]” a previous opinion. See Bosse v. Oklahoma, 580 U.S. -, 137 S.Ct. 1, 2, 196 L.Ed.2d 1 (2016) (per curiam); Evans v. Sec’y, Fla. Dep’t of Corr., 699 F.3d 1249, 1263 (11th Cir. 2012) (Carnes, C.J.) (“The Supreme Court has not always been consistent in its decisions or in its instructions to lower courts. There are, however, some things the Court has been perfectly consistent about, and one of them is that it is that Court’s prerogative alone to overrule one of its precedents.”). Further, Maples did not adopt the portion of the Holland concurrence discussing the tolling effect of negligence. Maples cited favorably Section II of the Holland concurrence; Section I discussed negligence. Specifically, Maples cited Section II for guidance on how to determine whether an attorney “abandoned” a client, an issue for which there was limited guidance.
The Holland majority and the Maples majority comprised the same six Justices. Interpreting Maples as implicitly overruling Holland, the Majority claims that the six Justices about-faced in Maples, a case that was decided a mere 19 months after Holland.
A. Holland reversed this circuit’s rule that attorney negligence, even gross negligence, alone can never equitably toll the limitations period.
Under 28 U.S.C. § 2244(d) of the Anti-terrorism and Effective Death Penalty Act (AEDPA), a state prisoner has a year after final judgment, among other enumerated dates, to petition for federal habeas relief. The prisoner is entitled to equitable tolling of this limitations period if he can establish “(1) that he has been pursuing his rights diligently!] and (2) that some extraordinary circumstance stood in his way....” Holland, 560 U.S. at 649, 130 S.Ct. at 2562 (quoting Pace v. DiGuglielmo, 544 U.S. 408, 418, 125 S.Ct. 1807, 1814, 161 L.Ed.2d 669 (2005)). The issue in Holland and here is whether the misconduct of a prisoner’s attorney constitutes an “extraordinary circumstance” that merits equitably. tolling the limitations period.
In Holland, the prisoner’s attorney communicated with the prisoner only three times over three years, and “each time by letter.” Id. at 636, 130 S.Ct. at 2555. This circuit held that the attorney’s misconduct constituted at most gross negligence and declared that attorney negligence alone can never constitute an extraordinary circumstance:
[I]n our view, no allegation of lawyer negligence or of failure to meet a lawyer’s standard of care — in the absence of an allegation and proof of bad faith, dishonesty, divided loyalty, mental impairment or so forth on the lawyer’s part — can rise to the level of egregious attorney misconduct that would entitle [the prisoner] to equitable tolling. Pure professional negligence is not enough.
Holland, 539 F.3d at 1339.
The Supreme Court reversed this rejection of negligence as a ground for equitable tolling and remanded for further proceedings. Emphasizing that the prisoner’s case presented a question of equity, the Court instructed that — in determining whether to equitably toll based on any attorney misconduct other than garden-variety negligence[2] — we must consider the *1240 misconduct on a “case-by-case basis” and avoid imposing “mechanical rules”:
In emphasizing the need for flexibility, for avoiding mechanical rules, we have followed a tradition in which courts of equity have sought to relieve hardships which, from time to time, arise from a hard and fast adherence to more absolute legal rules, which, if strictly applied, threaten the evils of archaic rigidity. The flexibility inherent in equitable procedure enables courts to meet new situations that demand equitable intervention, and to accord all the relief necessary to correct particular injustices.
Holland, 560 U.S. at 650, 130 S.Ct. at 2563 (citations omitted).[3]
Despite this instruction, the Majority resurrects this circuit’s overruled Holland holding and reinstates the mechanical rule that attorney negligence, even gross negligence, alone can never equitably toll the limitations period for a federal habeas petition:
[We] hold[] that attorney negligence, even gross or egregious negligence, does not by itself qualify as an “extraordinary circumstance” for purposes of equitable tolling....
See Maj. Op. at 1227, 1234, 1236, 1237.[4]
Like Holland, this appeal hinges on a question of equity. Cadet requests, based on Goodman’s misconduct, equitable tolling of the limitations period for a federal habe-as petition. Although Cadet repeatedly inquired about the timing of his federal ha-beas petition, Goodman failed to research the issue. Yet Goodman repeatedly reassured Cadet that months remained in the limitations period and discouraged Cadet from seeking advice from others. Goodman was incorrect, and Cadet’s petition was untimely. Because Goodman’s misconduct exceeded garden-variety negligence, Cadet is entitled to a case-specific inquiry — free of categories and other mechanical rules rejected by the Supreme Court — into whether Goodman’s misconduct merits equitably tolling the AEDPA limitations period. See Holland, 560 U.S. at 650, 130 S.Ct. at 2563. The Majority, in conflict with Supreme Court instruction, denies Cadet this inquiry.[5]
*1241 B. The Majority interprets Maples as implicitly overruling Holland.

1. The Supreme Court prohibits construing one of its opinions as implicitly overruling a previous opinion.

The Majority sends us back to this circuit’s pre-Holland jurisprudence by interpreting Maples as implicitly overruling Holland and by reinstating this circuit’s reversed Holland decision. However, the Supreme Court has stated, “It is this Court’s prerogative alone to overrule one of its precedents,” warning against construing one of its opinions as “implicitly overruling]” a previous opinion. See Bosse, 137 S.Ct. at 2 (quoting United States v. Hatter, 532 U.S. 557, 567, 121 S.Ct. 1782, 1790, 149 L.Ed.2d 820 (2001)); Evans, 699 F.3d at 1263 (“The Supreme Court has not always been consistent in its decisions or in its instructions to lower courts. There are, however, some things the Court has been perfectly consistent about, and one of them is that it is that Court’s prerogative alone to overrule one of its precedents.”); id. (“We must not, to borrow Judge Hand’s felicitous words, ‘embrace the exhilarating opportunity of anticipating’ the overruling of a Supreme Court decision.”); id. (“The Court has told us, over and over again, to follow any of its decisions that directly applies in a case, even if the reasoning of that decision appears to have been rejected in later decisions and leave to that Court the prerogative of overruling its own decisions.”).
Reluctant to declare forthright that Maples implicitly overruled Holland, the Majority states that Maples “construed and clarified” Holland', that the former decision must be read “in light of’ the latter decision; that the latter decision “reached back to” the former decision’s concurrence; and that the former decision’s concurrence “set the template” for the latter decision. See Maj. Op. at 1223-24, 1226, 1227. Each phrase is no more than a euphemism for implicit overrule. The Majority all but declares that Maples implicitly overruled Holland, which instructed us to avoid the imposition of a mechanical rule and to grant relief on a case-by-case basis. See Holland, 560 U.S. at 650, 130 S.Ct. at 2563. According to the Majority, Maples declared that attorney negligence alone can never merit equitably tolling the limitations period. In other words, the Majority believes that Maples imposed a mechanical rule, which the Majority now adopts to conclude that the type of misconduct that Goodman committed can never equitably toll the limitations period.
The Majority interprets Maples as implicitly overruling Holland. This interpretation contravenes the Supreme Court’s instruction against construing one of its opinions as “implicitly overrulpng]” a previous opinion. See Bosse, 137 S.Ct. at 2; Evans, 699 F.3d at 1263.
2. The Majority’s interpretation of Maples as implicitly overruling Holland is baseless.
The Majority’s interpretation of Maples as implicitly overruling Holland relies solely on Maples’s citation of the Holland concurrence. However, Maples does not embrace the portion of the Holland concurrence at odds with the Holland majority; Maples supports its decision with a section of the concurrence that does not discuss negligence.
*1242 Justice Alito’s concurrence comprised two clearly delineated sections: the first section discussed negligence, and the second did not. Merely summarizing Section I in order to introduce Section II, Maples focused on Section II, which entertained a prisoner’s argument that his attorney “essentially abandoned him.” See Holland, 560 U.S. at 659-60, 130 S.Ct. at 2568. Likewise, Maples involved a prisoner’s argument that his attorney “abandoned” him. See Maples, 565 U.S. at 282, 132 S.Ct. at 923. Because discussion of an attorney’s “abandonment” of a client was sparse in case law, Maples found the Holland concurrence to be “instructive.” See id. at 281, 132 S.Ct. at 923.
Even with Section II, Maples used the section at most as a reference. Although Maples “agree[d]” with the Holland concurrence’s application of agency law, Maples did not elevate the Holland concurrence to controlling law. See id. at 283, 132 S.Ct. at 924. In other words, Maples’s, citation of the Holland concurrence is about as significant as the Majority’s citation of dictionaries in defining “abandonment.” See Maj. Op. at 1234. The Holland concurrence is as much controlling law as these dictionaries: not at all. No support exists for the Majority’s position that, “[i]n the course of explaining its Holland decision, the Maples Court reached back to Justice Alito’s concurring opinion in Holland, and adopted his distinction ... between a claim of attorney error, however egregious, and a claim that an attorney had essentially abandoned his client.” See id. at 1226-27 (citing Maples, 565 U.S. at 282, 132 S.Ct. at 923).
The Majority’s primary argument for Maples’s elevating Section I to controlling law is the phrase “essential difference” in Maples’s summary of the concurrence:
In a concurring opinion in Holland, Justice Alito homed in on the essential difference between a claim of attorney error, however egregious, and a claim that an attorney had essentially abandoned his client.
Maples, 565 U.S. at 282, 132 S.Ct. at 923. The Majority believes that the phrase “essential difference” implies that Maples not only adopted the Holland concurrence’s distinction between “attorney error” and “essential abandonment” but also rejected attorney error as a ground for equitable tolling. See Maj. Op. at 1225, 1226-27, 1233-34. “ ‘Essential difference’ means ‘essential difference,’ ” says the Majority. Id. at 1226-27.
The Majority’s wishful reading of Maples is refuted by Maples’s subsequently identifying the portion of the Holland concurrence from which it extracts value:
We agree that, under agency principles, a client cannot be charged with the acts or omissions of an attorney who has abandoned him.
See Maples, 565 U.S. at 283, 132 S.Ct. at 924. If Maples wished to adopt Section I’s distinction between “attorney error” and “essential abandonment” and to reject attorney error as a ground for equitable tolling, it would have said so. The Majority’s interpretation of Maples as implicitly overruling Holland is baseless.
C. Reinstating this circuit’s reversed rule, the Majority weighs in on an issue that divided, and was resolved by, the Holland Court.
The Majority reinstates the mechanical rule that negligence, even gross negligence, alone can never equitably toll the limitations period. Attempting to justify this rule, the Majority quibbles with Holland’s instruction against the imposition of a mechanical rule and states, “In Holland itself the Court reaffirmed its own ‘rigid’ or ‘mechanical’ rule that simple or garden variety negligence alone can never warrant *1243 equitable tolling.” See Maj. Op. at 1227-28. While criticizing the Holland majority, the Majority applauds and adopts the Holland concurrence, which stated that distinguishing garden-variety negligence from other types of negligence was impractical and recommended a standard prohibiting negligence from equitably tolling the limitations period. The Majority continually cites as authoritative Maples’s, summary of Justice Alito’s concurrence: “In a concurring opinion in Holland, Justice Alito homed in on the essential difference between a claim of attorney error, however egregious, and a claim that an attorney had essentially abandoned his client.” See Maples, 565 U.S. at 282, 132 S.Ct. at 923; Maj. Op. at 1225, 1226-27, 1233-34.
Put another way, the Majority weighs in on an issue that divided, and was resolved by, the Holland Court: the need for a standard governing the tolling effect of attorney misconduct other than garden-variety negligence. Compare Holland, 560 U.S. at 649-50, 130 S.Ct. at 2563 (“[T]he exercise of a court’s equity powers must be made on a case-by-case basis.”), with id. at 657-58, 130 S.Ct. at 2567 (Alito, J., concurring) (“Allowing equitable tolling in cases involving gross rather than ordinary attorney negligence would ... be impractical in the extreme.”), id. at 671, 130 S.Ct. at 2575 (Scalia, J., dissenting) (criticizing the Holland majority’s “refusal to articulate an intelligible rule”), and Maj. Op. at 1228 (“[T]he inquiry should not be a standard-less, by-the-seat-of-the-pants, length-of-the-ehancellor’s-foot, purely discretionary decision.”). As a court of appeals, we cannot take sides on an issue on which the Court has already ruled. We must adopt, rather than dispute, the Court’s controlling opinion and cannot favor over the Court’s majority ruling a contradicting concurrence that failed to win the majority vote. As the Holland Court instructs, we must evaluate attorney misconduct other than garden-variety negligence on a case-by-case basis to determine whether the misconduct merits equitably tolling a federal habeas petitioner’s limitations period.
II
Denying Cadet equitable tolling, the Majority errs not only in declaring that an attorney’s negligence alone can never merit equitable tolling but also in relying, to an unjustified extent, on agency law. The correct examination is free of categories and other mechanical rules and uses, among other things, this circuit’s case law, agency law, and professional responsibility principles. This examination reveals that Cadet is entitled to equitable tolling of the AEDPA limitations period.
A. The Majority relies to an unjustified extent on agency law.
As stated before, a prisoner is entitled to equitable tolling of the AEDPA limitations period if he can establish “(1) that he has been pursuing his rights diligently!] and (2) that some extraordinary circumstance stood in his way....” Holland, 560 U.S. at 649, 130 S.Ct. at 2562. The issue here is whether Goodman’s misconduct constitutes an extraordinary circumstance that merits equitably tolling Cadet’s limitations period. Considering whether Goodman’s misconduct constitutes an extraordinary circumstance, the Majority relies to an unjustified extent on agency law.[6] The *1244 Majority concludes that no extraordinary circumstance exists after it determines that Goodman never severed the agency relationship and that Goodman’s missing the limitations deadline was attributable to Cadet, the principal. The Majority treats agency law as dispositive.
The Majority offers two justifications for this dependency on agency law. First, the Majority cites Maples’s use of “well-settled principles of agency law.” See Maj. Op. at 1229 n.4 (citing Maples, 565 U.S. at 280-81, 132 S.Ct. at 922). However, Maples’s, use of agency law was limited to entertaining a prisoner’s argument that his attorney “abandoned” him. See Maples, 565 U.S. at 271, 132 S.Ct. at 917. The Majority’s application of agency law — as the primary method of determining the existence of an extraordinary circumstance — reaches far beyond Maples’s guidance. Justice Scalia in his Holland dissent criticized the majority for “importing into equity” the standard of another area of law. See Holland, 560 U.S. at 670-71, 130 S.Ct. at 2575 (Scalia, J., dissenting). The Majority here goes beyond importing agency law into equity: it replaces equity with agency law.
Second, the Majority depends on agency law under the false assumption that the only issue on appeal is whether Goodman abandoned Cadet. The Majority states, “Abandonment is not the only professional misconduct or other extraordinary circumstance that will suffice for equitable tolling, but it is the only one besides negligence that Cadet has argued.” Maj. Op. at 1228; see id. at 1228 n.3. Not so. Summarizing his argument, Cadet frames the issue on appeal broadly:
Mr. Goodman’s hallow reassurances to Mr. Cadet that he would timely file a federal habeas petition in response to Mr. Cadet’s repeated requests that he do so, and his failure to undertake necessary research to determine the correct filing date despite Mr. Cadet’s repeated questioning of the calculation of the filing deadline constitute “extraordinary circumstances” warranting equitable tolling of the limitations period.
Appellant’s Br. at 15; see id. at 16, 23 (“Accordingly, Mr. Cadet has demonstrated ‘extraordinary circumstances’ sufficient to warrant equitable tolling.”).
Although Cadet argues extensively that Goodman abandoned him, he does so because the district court incorrectly held that, “in order to rise to the level necessary to constitute an ‘extraordinary circumstance’ ... attorney negligence must be so egregious as to amount to an effective abandonment of the attorney-client relationship.” Cadet v. Fla., Dep’t of Corr., No. 9:07-cv-80758, at 70, 2012 WL 3150270 (S.D. Fla. Aug. 1, 2012). Instead of correcting the district court, the Majority believes that Cadet narrowed the standard with which the Majority can determine whether an extraordinary circumstance exists. This appeal is about whether Goodman’s misconduct constituted an extraordinary circumstance. The Majority cannot fault Cadet for the district court’s misstatement of the standard and cannot justify limiting this appeal to whether Goodman abandoned Cadet.
Agency law is not the be-all and end-all for this question of equity. See Downs v. McNeil, 520 F.3d 1311, 1321 (11th Cir. 2008) (“The rule that a petitioner must always bear the consequences of his attorney’s misconduct is unequivocal — yet bright-line rules do not govern the court’s exercise of its equitable powers.”). We can *1245 consider agency law at most as a factor in determining whether an attorney’s misconduct constitutes an extraordinary circumstance.[7]
B. Goodman’s misconduct compels a case-specific inquiry.
Holland held that any attorney misconduct that exceeds garden-variety neglb gence compels a case-specific inquiry into whether equitable tolling is warranted. See Holland, 560 U.S. at 650-51, 130 S.Ct. at 2563. Goodman’s misconduct exceeded garden-variety negligence. And a case-specific inquiry reveals that Goodman’s misconduct merits equitably tolling the AEDPA limitations period for Cadet.

1. Goodman’s misconduct exceeded garden-variety negligence.

Goodman’s misconduct involved a miscalculation of the limitations period, an example of garden-variety negligence. See id. at 651-52, 130 S.Ct. at 2564 (citing Lawrence, 549 U.S. at 336, 127 S.Ct. at 1085). However, the misconduct at issue here comprised not only Goodman’s miscalculation but also (1) Goodman’s staunchly refusing, despite repeated inquiries from Cadet, to research how to calculate the limitations period; (2) Goodman’s repeatedly offering empty reassurances to Cadet that he; the “real lawyer,” had correctly calculated the limitations period; and (3) Goodman’s discouraging Cadet from, seeking a second opinion, even if from a “jailhouse lawyer.” As Goodman recounted at an evidentiary hearing:
I convinced [Cadet], literally sat on the phone and convinced him. Like I said, I can still hear [Cadet saying] in my head, are you sure? Are you sure? Are you sure? I remember that particular conversation and I talked him out of it. I left him in a position where here’s a person from Haiti who — who lost his life in a fundamentally unfair way at trial, having to choose between the jailhouse lawyers that he’s locked up with and my advice. He chose my advice which, I admit in open court, was wrong.
Transcript of Evidentiary Hearing at 29, Cadet v. Fla. Dep’t of Corr., No. 9:07-cv-80758 (S.D. Fla. July 15, 2012). Goodman’s misconduct exceeded garden-variety negligence.

2. A case-specific examination reveals that Cadet is entitled to equitable tolling.

Goodman’s misconduct compels a case-specific examination, free of categories and other mechanical rules rejected by the Supreme Court, of whether Cadet is entitled to equitable tolling. See Holland, 560 U.S. at 650, 130 S.Ct. at 2563. A case-specific examination of this circuit’s case law, agency law, and professional responsibility principles reveals that Goodman’s misconduct merits equitable tolling.
*1246 First, this circuit’s case law strongly favors equitably tolling the limitations period. Holland, instructed us to resolve questions of equity on a “case-by-case basis” but “in light of ... precedent.” Id. Downs involved allegations similar to the facts here. The allegations included:
[Downs’s] unequivocal, repeated demands that his attorneys file his habeas petition; his close tracking of his attorneys’ work and the applicable federal deadlines; and his counsel’s overt deception in representing they had filed a tolling petition in state court when they had not in fact done so, thereby depriving him of several months of his statutorily-guaranteed one-year federal limitations period.
Downs, 520 F.3d at 1322. Although Downs’s attorneys filed his state habeas petition before expiration of the federal habeas limitations period, we still concluded that the one day in which to petition for federal habeas relief after the conclusion of his state habeas petition “put [Downs, a prisoner,] in an untenable position.” Id. We held that, “[assuming Downs’[s] allegations are true, he has shown the existence of extraordinary circumstances.” Id. at 1323.
Downs focused on the contrast between Downs’s “persistence” and his attorneys’ “deceit and delay.” Id. at 1322. Such contrast exists here. Cadet unequivocally and repeatedly demanded that Goodman verify the correct limitations period; sought help from “jailhouse lawyers”; and was deceived by Goodman into believing that Goodman, the “real lawyer,” had superior knowledge of the limitations period than either Cadet or the jailhouse lawyers. This circuit’s case law strongly favors equitably tolling the limitations period.
Second, principles of agency law strongly favor equitably tolling the AEDPA limitations period for Cadet. The Third Restatement of Agency states:
[N]otice of a fact that an agent knows or has reason to know is not imputed to the principal if the agent acts adversely to the principal in a transaction or matter, intending to act solely for the agent’s own purposes or those of another person.
Restatement (Third) Of Agency § 5.04 (2006); see also Restatement (Second) Of Agency § 112 (1958). Goodman acted adversely to Cadet’s interest by refusing to research the tolling issue, by offering false advice to Cadet, and by discouraging Cadet from seeking advice from jailhouse lawyers. Thus the correct limitations period — which the agent, Goodman, had “reason to know” — -“is not imputed to the principal,” Cadet. See Restatement (Third) Of Agency § 5.04.
Concluding that knowledge about the correct limitations period is imputed to Cadet, the Majority does not dispute that the Goodman had reason to know about the correct limitations period and that Goodman acted adversely to Cadet. Instead, the Majority argues that Cadet failed to establish that Goodman’s misconduct was “for the purpose of advancing his own interests or those of another person.” See Maj. Op. at 1229. However, imposing this burden, the Majority resorts to sources that speak to general principles of agency law rather than those discussing an attorney’s relationship with his client. This is because no burden exists for a client to establish an attorney’s selfish motive, which is assumed in the application of agency law to a lawyer-client relationship.[8]
*1247 Indeed, the cases that the Majority cites so dearly in order to apply agency law— Maples, Coleman, and Downs — contain no discussion of the offending attorney’s motive. See generally Maples, 565 U.S. 266, 132 S.Ct. 912; Coleman v. Thompson, 501 U.S. 722, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991); Downs, 520 F.3d 1311. The cases offer no reason for the omission and appear to assume, based on the particular facts of a case, that an attorney receives monetary or other benefit either by retaining the client at issue or by gaining other clients.[9] The former assumption is true here. Goodman was able to retain Cadet as a client by advising Cadet without any research and by constantly reassuring Cadet that Goodman possessed superior knowledge. Goodman’s failure is not imputed to Cadet. The Majority’s requiring Cadet to establish further Goodman’s selfish motive, perhaps with a fee agreement or goodwill Goodman gained for his pro bono work, is imposing on Cadet a novel burden unfounded in any case involving the application of agency law to a lawyer-client relationship.[10]
Because Goodman had reason to know about the correct limitations period and because Goodman acted adversely to Cadet, agency law strongly favors equitably tolling the limitations period.
Finally, fundamental canons of professional responsibility strongly favor equitably tolling the AEDPA limitations period for Cadet. Holland considered an attorney’s violation of “fundamental canons of professional responsibility” as a factor in determining whether his actions constituted an extraordinary circumstance.[11] Hol *1248 land, 560 U.S. at 652, 130 S.Ct. at 2564. These canons included “performing] reasonably competent legal work” and “communicating] with ... clients. ” Id.
Goodman failed “to perform reasonably competent legal work.” See id.; ABA Model Rules of Profl Conduct r. 1.1. Despite never having filed a federal habeas petition after representation in state post-conviction proceedings, Goodman failed to perform any research on the AEDPA limitations period. Only after Florida argued that Cadet’s federal habeas petition was time-barred did Goodman log onto West-law for the first time to research how to calculate the limitations period. See Tr. of Evid. Hr’g at 18-19. And despite this lack of experience and knowledge, Goodman repeatedly advised Cadet on the limitations period.-
Also, Goodman failed to communicate meaningfully with Cadet. See Holland, 560 U.S. at 652, 130 S.Ct. at 2564; Model Rules r. 1.2 cmt. 2 (advising that, if a lawyer and a client disagree about “the means to be used to accomplish the client’s objectives,” the lawyer “consult with the client and seek a mutually acceptable resolution of the disagreement”). Although Cadet repeatedly voiced concern that he would lose the opportunity to petition in federal court, Goodman flippantly disregarded Cadet’s justifiable anxiety and the contrary advice that Cadet had received. Goodman even went so far as to rebuke Cadet for contemplating advice contradicting his own. Fundamental canons of professional responsibility strongly favor equitably tolling the limitations period.
Ill
Holland instructed us that, in determining whether to equitably toll the time to file a federal habeas petition, we must avoid imposing a mechanical rule. Disregarding this instruction, the Majority imposes the mechanical rule that attorney negligence alone can never justify equitable tolling. The Majority’s plea not to be misunderstood does not change the fact that its opinion directly contravenes Holland. See Maj. Op. at 1236 (“We do not wish to be misunderstood.”); id. at 1237 (“Despite our earnest desire not to be misunderstood, the dissent misunderstands our decision....”).
The “flexibility inherent in equitable procedure” allows us “to accord all the relief necessary to correct particular injustices.” Holland, 560 U.S. at 650, 130 S.Ct. at 2563 (internal quotation marks omitted). Goodman’s deplorable misconduct merits allowing Cadet extra time to file his federal habeas petition. We must grant Cadet this equitable relief. ’
I respectfully dissent.
ORDER
Opinions, containing substantial revisions, having been issued by the Court, the petition for rehearing addressing the original panel opinion has effectively been granted, and the grounds for the petition for rehearing en banc have effectively been mooted. Because new opinions have been issued, the parties are free to file petitions for rehearing and for rehearing en banc addressing this decision of the Court, as explained by the new opinions, if they wish to do so. The time limits in the rules of procedure will run from today’s date.[1]

. Approximately one hundred opinions and report and recommendations have cited this panel’s initial opinion, many for the proposition that only abandonment merits equitably tolling the limitations period for a federal habeas petition. See, e.g., Gillman v. Sec’y, Fla. Dep’t of Corr., 576 Fed.Appx. 940, 943 n.7 (11th Cir. 2014) (per curiam) (Carnes, C.J., Tjoflat, Jordan, J.J.) ("[Cadet] held that the correct standard for determining whether attorney misconduct qualifies as an extraordinary circumstance for equitable tolling purposes is whether the conduct amounts to abandonment of the attorney-client relationship.”); Moore v. Jones, No. 3:14-cv-484, 2016 WL 1069668 (N.D. Fla. Mar. 17, 2016) (adopting a report and recommendation that states, "[Abandonment of the attorney-client relationship is required”).

. Holland recognized that in previous cases the Supreme Court had held that a "garden variety claim of excusable neglect” could not merit equitable tolling. See Holland, 560 U.S. *1240 at 633, 130 S.Ct. at 2553 (quoting Irwin v. Dep’t of Veterans Affairs, 498 U.S. 89, 96, 111 S.Ct. 453, 458, 112 L.Ed.2d 435 (1990)). For brevity's sake, the Dissent addresses a "garden variety claim of excusable neglect” as "garden-variety negligence.”

.The Holland majority ruled against the imposition of a mechanical rule and never condoned the categorization of certain attorney misconduct as "gross negligence.” The Holland majority used the phrase only to describe this circuit's holding in that case. See 560 U.S. at 634, 644, 649, 130 S.Ct. at 2554, 2559, 2563. Only the Holland concurrence adopted gross negligence as a category of attorney misconduct. See id. at 657, 130 S.Ct. at 2567 (Alito, J., concurring). In accord with the Holland majority, the Dissent does not recognize gross negligence as a category of attorney misconduct and uses the phrase only in response to the Majority's use.

. The Majority argues that its declaration— that attorney negligence alone can never merit equitable tolling — is not a mechanical rule. In support, the Majority states that its opinion "make[s] clear that abandonment, or some other professional misconduct, or some other extraordinary circumstance can be sufficient for equitable tolling.” Maj. Op. at 1227 n.2. A principal imposes a mechanical rule by prohibiting students from wearing only pants, and no other garments, to school. This rule is still a rule even though the principal likely allows the students to wear the pants with shoes and a top to school.

. The Majority believes that its opinion is consistent with Holland because Holland never held that "gross negligence alone may be an extraordinary circumstance warranting equitable tolling.” Maj. Op. at 1227; see id. at 1223-24, 1225-26. As the third footnote of this Dissent states, no portion of the Holland majority condoned the categorization of cer *1241 tain attorney misconduct as "gross negligence.” Rather, Holland ruled against the imposition of a mechanical rule. The Majority defies Holland because the Majority imposes a mechanical rule — the creation of a category of attorney misconduct that can never constitute an extraordinary circumstance — not because the Majority excludes a category of attorney misconduct that Holland acknowledged and included as an extraordinary circumstance.

. The only other reasoning that the Majority offers is dictionary definitions of the word "abandonment,” a word that was first uttered by the prisoners in Holland and Maples. Often used as a method of interpreting "statutes, ... constitutional provisions!,] and administrative codes,” dictionary definitions are rejected by many even in interpreting statutes. See Note, Looking It up: Dictionaries and Statutory Interpretation, 107 Harv. L. Rev. 1437, *1244 1437-39 (1994). Using dictionary definitions to understand a litigant’s claim and a Supreme Court opinion is less justified than using dictionary definitions to understand statutory text.

. The Majority views as contradictory the Dissent’s rejecting agency law as dispositive yet considering agency law as a factor. See Maj. Op. at 1229 n.4. But using factors to help apply an undefined standard to the particulars of a case is logically sound and commonplace. For example, a federal court deciding whether to transfer a case to another venue must determine whether the transfer is "[fjor the convenience of parties and witnesses” and "in the interest of justice.” See 28 U.S.C. § 1404(a). Neither standard is defined in § 1404(a). Courts have since accumulated factors that courts can consider before deciding whether to transfer, factors such as "the relative means of the parties” and “a forum's familiarity with the governing law.” See, e.g., Manuel v. Convergys Corp., 430 F.3d 1132, 1135 n.1 (11th Cir. 2005). No one standard is dispositive in determining whether the transfer is "[f]or the convenience of parties and witnesses” and "in the interest of justice.” See § 1404(a).

. The Majority cites a case that might conceivably support the imposition of this burden. See Maj. Op. at 1230. However, the case — from another circuit — stated only that the client “does not argue, and the record does not suggest, that [the attorney] permitted *1247 any interest or consideration to interfere with his loyalty to” the client. See Towery v. Ryan, 673 F.3d 933, 942 (9th Cir. 2012). Even that case fails to evince a burden on a client to establish an attorney's selfish motive, especially one that is readily inferred from the record.

. After imposing a novel burden — that a client must establish an attorney’s selfish motive— the Majority tasks the Dissent with proving the absence of this burden in other cases. Rather than entertaining this farcical request for the Dissent to prove a negative, the Dissent considers the reason for the omission. In other words, the Dissent considers why these cases might have chosen not to impose this burden.

. This burden is especially onerous because Goodman is no longer Cadet’s attorney. Because of Goodman’s misconduct during this appeal — misconduct unrelated to that which resulted in Cadet’s untimely federal habeas petition — we have suspended Goodman from practicing before this circuit. See In re Michael Steven Goodman, No. 11-1101 (11th Cir. May 13, 2011). The United States District Court for the Southern District of Florida likewise suspended Goodman from practicing before it. See In re Michael Steven Goodman, No. 2011-95 (S.D. Fla. Nov. 1, 2011).
Even if the Majority chooses to impose this burden, we should remand this case for additional fact finding. "Ascertaining the motives with which an agent acted is often a fact-intensive exercise.” Restatement (Third) Of Agency § 5.04 cmt. a.

.In his Holland dissent, Justice Scalia, while criticizing the majority for "refusing] to articulate an intelligible rule” governing equitable tolling, rejected the majority’s application of fundamental canons of professional responsibility. See Holland, 560 U.S. at 670-71, 130 S.Ct. at 2575 (Scalia, J., dissenting). He discredits this rule because it was proposed "by an ad hoc group of legal-ethicist amici" and because of its similarity to Strickland’s holding that a defendant’s right to counsel assumes the counsel’s adherence to "prevailing professional norms.” See id. (citing Strickland v. Washington, 466 U.S. 668, 688, 104 S.Ct. 2052, 2065, 80 L.Ed.2d 674 (1984)). In the realm of equity, however, no statutory language guides a court in creating a rule. "Extraordinary circumstance,” "abandonment,” and "negligence” are each a judicial creation or borrowed from a different area of law. It is within a court’s power to borrow from the wisdom of amici and of other areas of law to determine a question of equity. Although not dispositive, fundamental canons of professional responsibility guide us *1248 in determining whether an attorney’s misconduct warrants equitable tolling of the limitations period for a federal habeas petition.

. The precedential effect of an opinion, whether an initial one or a superseding one on rehearing, begins on the date it is issued, not on the later date that the mandate is issued in the case. 11th Cir. R. 36, I.O.P. 2.