IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
March 5, 2024 Session

**LAVINO HORNE v. STATE OF TENNESSEE**

**Appeal from the Criminal Court for Shelby County**
No. 10-00509     Jennifer Johnson Mitchell, Judge

———————————————————

**No. W2023-00675-CCA-R3-PC**

———————————————————

Petitioner, Lavino Horne, appeals the denial of his petition for post-conviction relief, arguing that the post-conviction court correctly determined that the statute of limitations should be tolled for his untimely petition because he diligently pursued his petition after being abandoned by trial counsel. He further contends that he received ineffective assistance of counsel at trial. The State responds that the post-conviction court erred by finding that extraordinary circumstances prevented Petitioner from timely filing his petition and denying the State's motion to dismiss the petition as untimely. The State further argues that Petitioner failed to show that he received ineffective assistance of counsel at trial. Following our review of the entire record, the briefs, and oral arguments of the parties, we conclude that Petitioner failed to show that the one-year statute of limitations should be tolled on due process grounds. Accordingly, Petitioner's post-conviction claim of ineffective assistance of counsel is barred by the statute of limitations and we reverse the post-conviction court's denial of the State's motion to dismiss the petition as untimely.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Reversed**

JILL BARTEE AYERS, J., delivered the opinion of the court, in which ROBERT L. HOLLOWAY, JR., and ROBERT H. MONTGOMERY, JR., JJ., joined.

Josie S. Holland (on appeal) and Terita Hewlett (at post-conviction hearing), Memphis, Tennessee, for the appellant, Lavino Horne.

Jonathan Skrmetti, Attorney General and Reporter; G. Kirby May, Assistant Attorney General; Steve Mulroy, District Attorney General; and Leslie Byrd, Assistant District Attorney General, for the appellee, State of Tennessee.

# OPINION

## Factual and Procedural Background

Petitioner and his co-defendants, Leterpa Mosley and Charles McClain, were each convicted of one count of premeditated murder, one count of felony murder, and one count of especially aggravated robbery for the shooting death of Tederrial Hancock, a student at the University of Memphis. Mr. Hancock was shot seven times while sitting in his car outside of the Hollywood Public Library. A full recitation of the facts can be found in this court's opinion on direct appeal affirming Petitioner's and his co-defendants' convictions.[1] *State v. McClain, et al.*, No. W2013-00328-CCA-R3-CD, 2014 WL 4754531, at *1-2 (Tenn. Crim. App. Sept. 24, 2014).

Petitioner's untimely pro se petition for post-conviction relief was filed on February 8, 2016, which indicated that he delivered it to prison authorities for mailing on February 1, 2016. The petition alleged newly discovered evidence and other grounds. Thereafter, the State filed a motion to dismiss based on the petition's having been filed beyond the one-year statute of limitations. Post-conviction counsel was appointed, and Petitioner filed a response to the motion to dismiss indicating that he sent numerous letters to trial counsel requesting copies of his records, trial transcripts, and information regarding the filing deadlines. He asserted that trial counsel did not respond to his requests for several months, and he did not receive copies of his trial transcripts until after he filed a complaint with the Tennessee Board of Professional Responsibility ("BPR"). He further asserted that he was a juvenile at the time of the offenses, and "still ha[d] no higher education. As a result, Petitioner struggled to figure out what he should do in order to proceed with his case and relied substantially on efforts to contact his attorney." Petitioner alleged that "[a]s a result of this lack of communication and lack of access to his case files, Petitioner was not able to file his pro se petition for relief until after the deadline." Petitioner attached to his response several documents concerning his efforts to contact trial counsel and to obtain his trial records for post-conviction proceedings.

At the January 11, 2019 hearing on the State's motion to dismiss the petition, Petitioner did not dispute that his petition was untimely. He agreed that his Rule 11 application to the Tennessee Supreme Court was denied on January 15, 2015, the mandate was issued on January 20, 2015, and his petition was not filed until February 8, 2016. Relying on *Whitehead v. State*, 402 S.W.3d 615 (Tenn. 2013), Petitioner argued that

---

[1] The trial court merged the felony murder conviction with the premeditated murder conviction for Petitioner and each co-defendant and imposed concurrent sentences of life for first degree murder and twenty-five years for especially aggravated robbery.

"extraordinary circumstances that were out of [his] control led to [his petition] being filed untimely."[2]

Trial counsel testified that he had been practicing criminal defense law since 1994 and was appointed to represent Petitioner. After trial, he filed a motion for new trial and an appeal, which were both denied. After receiving notice that Petitioner's Rule 11 application was denied by the supreme court, he instructed an intern who was assisting him to send Petitioner a letter, dated February 9, 2015, indicating that trial counsel's representation of Petitioner had ended. Trial counsel further explained that the purpose of the letter was "[t]o notify [Petitioner] that the [s]upreme [c]ourt had denied his application, his Rule 11 application, our representation had ended. And in this particular letter [the intern] included the documentation, the things that we believed [Petitioner] had already been provided by us through the course of our representation." Trial counsel agreed that Petitioner did not have the trial transcripts at the time of the letter. However, in the letter, Petitioner's family was invited to pick up the transcripts and Petitioner's case file from trial counsel's office because they were too large to mail. Trial counsel was familiar with Petitioner's father and occasionally saw him after the trial. However, no one came to pick up the transcripts or file. Trial counsel said that the letter ended by stating, "I wish you well and . . . as always, if there's any other way our office may assist you, please don't hesitate to contact us." Trial counsel agreed that that sort of closing was standard in his letters.

Trial counsel testified that Petitioner's file contained letters received from Petitioner. He said that Petitioner wrote to him on September 6, 2015, "requesting opening and closing arguments, sentencing hearing, . . . motion for new trial transcripts, things of that nature." Trial counsel's office did not respond to the letter. He next received a letter from the BPR on September 29, 2015, notifying him that Petitioner had sent them a letter assuming that trial counsel "was his post-conviction lawyer." Trial counsel did not respond to the letter because he did not feel that it required a response. He explained that the BPR "often sends letters saying, Hey, here's a copy of something that a client of yours sent us and requires no action."

Trial counsel received a second letter from the BPR on October 20, 2015, with three attached letters from Petitioner, indicating that Petitioner had "contacted the Consumer Assistance Program and had a request, and that they requested I respond to him within ten days." He noted that a portion of one of Petitioner's letters to the BPR says, "Is there any way y'all can get [trial counsel] to send me the proper paperwork that I have requested? I am behind on my post[-]conviction due to a lack of paperwork. Without transcripts, I can't argue my claim." Trial counsel immediately mailed Petitioner's trial transcripts to him. He received a letter back from Petitioner on November 5, 2015, indicating that the

---

[2] At the hearing, Petitioner introduced a collective exhibit that included numerous letters he wrote to and from trial counsel, the criminal court clerk, and the BPR.

transcripts had been received and acknowledging that trial counsel had withdrawn from his case "back in February[.]" Petitioner also asked several questions about the next steps in his case such as going back to court to get new counsel appointed and filing something pro se. He also asked what his "next appeal" would be and the deadline for such an appeal. Trial counsel did not respond to the letter.

On cross-examination, trial counsel agreed that Petitioner had until January 15, 2016, to file his post-conviction petition. He further agreed that in Petitioner's October 8, 2015 letter to him, Petitioner said that he was behind on his post-conviction petition "due to a lack of paperwork" and that he had never filed his petition. Trial counsel thus agreed that Petitioner was aware that he had a right to file a post-conviction petition and knew he needed an attorney to represent him. Trial counsel explained that he did not respond to the questions raised in Petitioner's November 5, 2015 letter because:

> I knew he was aware of his post[-]conviction. I knew that - - that, you know, I'd invited the family to come get the file. I knew that my representation was over and that there was really nothing else for me to do. Wasn't trying to hurt him in his attempt to have his post[-]conviction, but I knew he knew it well. It - - and this is not fair to [Petitioner], but unfortunately, when you've been through a murder trial or a very serious trial, if you lose, you appeal, and ultimately there's a post[-]conviction. The - - the tenor of the letters you receive and the attitude from people is not the most pleasant. They're - -

> \*       \*       \*

> - - they are angry with you. They are upset with you. Again, that's not fair to [Petitioner] because nothing he wrote me seems to be like that, but that is the mindset you're used to dealing with. And once I know my job is done, we got him what he needs to do, I assume he knew very well he had a post[-]conviction and a deadline. I did not think I had to spoon feed him any of that and it wasn't out of ugliness. Honestly, it was more out of, I knew he knew those things.

Trial counsel testified that in addition to acknowledging that he was behind on his post-conviction petition, Petitioner also knew that he needed transcripts in order to argue his claims. In Petitioner's November 5, 2015 letter, he acknowledged that he had received the transcripts. His deadline for filing his post-conviction petition was more than two months later on January 15, 2016.

Petitioner testified at the hearing and conceded that his post-conviction petition was untimely filed. He said that he was sixteen years old at the time of the offenses and had an eighth grade education. He was twenty-three at the time of the tolling hearing and had obtained his GED while incarcerated. Trial counsel represented him throughout trial and

on appeal. Petitioner testified that he wrote a letter to trial counsel on December 29, 2014, requesting copies of his transcripts. He said that the purpose of the letter was to get information for his "appeal process," which was pending at the time. He wrote the criminal court clerk's office on December 31, 2014, also inquiring about the transcripts. Petitioner said that he had an inmate helping with the "appeals process" who wanted to review the transcripts. Petitioner claimed that he never received any information about his appeal and learned that it had been denied when he tried to file his post-conviction petition. He said that he did not receive trial counsel's February 9, 2015 letter advising him that his file was closed and that trial counsel no longer represented him, because he was in a different correctional facility from the one where the letter was sent.

Petitioner testified that he wrote to trial counsel again in September of 2015 in order to obtain his trial transcripts to "start on [his] next appeal." When asked what his next appeal was, Petitioner replied: "I didn't know. Like, an inmate told me that I need to start on my appeal, but I ain't know which one it was." He did not get a response to his letter from trial counsel, so he wrote a letter to the BPR asking if they would direct trial counsel to send the trial transcripts to Petitioner. Petitioner said that the BPR wrote a letter back assuming that trial counsel had already filed Petitioner's post-conviction petition. He was "confused" and wrote a second letter to the BPR indicating that trial counsel still had not sent his "proper paperwork" and that he was behind on his post-conviction petition because he thought that trial counsel had already filed it, but he was not sure.

Petitioner wrote another letter to the BPR clarifying that he had not filed a post-conviction petition and that his direct appeal and motion for new trial had been denied. He said that he was seeking assistance concerning his "next appeal" and what he needed to do. Petitioner estimated that he wrote five or six letters each to trial counsel and to the BPR seeking assistance. He also wrote letters to the "[c]ourt [c]lerk." Petitioner agreed that trial counsel contacted him within ten days after the BPR asked trial counsel to respond to Petitioner's concerns, and Petitioner received his trial transcripts. Petitioner said that he wrote to trial counsel after receiving the transcripts "[b]ecause at the end of the letter he told me to - - like, if I needed any more help or had any more questions, feel free to write him. So that's what I did." He said that he asked trial counsel three questions about his "next appeal." Petitioner testified that he did not receive a response from trial counsel and then wrote to the court clerk to ask about the deadline for filing his post-conviction petition. However, he did not receive a response from the court clerk, so he then filed his post-conviction petition which was late. He said that he learned that his petition was untimely after post-conviction counsel was appointed.

On cross-examination, Petitioner agreed that in his October 8, 2015 correspondence to the BPR, he acknowledged that he did in fact receive trial counsel's February 9, 2015 letter indicating that trial counsel's representation of Petitioner had ended and that he had not filed his post-conviction petition. He knew at that time that trial counsel had withdrawn from his case and he was focused on filing his post-conviction petition and was looking for

assistance. Petitioner testified that as of October 8, 2015, he thought that he had one year from the date of his trial to file his post-conviction petition, and he was "trying to meet that deadline." In Petitioner's November 5, 2015 letter to trial counsel, he also acknowledged that trial counsel had withdrawn from his case in February of 2015 and no longer represented him. Petitioner testified that he had inmates helping with the post-conviction petition, "who's been there over 20 years and legal advisors." When asked about getting assistance from inmates, Petitioner replied: "You go to the law library and find someone who [has] been doing law work, or you talk to an inmate around and they'll point you to the right person. That's how I found out about my post[-]conviction and stuff like that." Petitioner testified that someone explained "post-conviction petitions" to him and began helping him with the process. He was told that he needed the transcripts to find out which issues to raise. Petitioner agreed that he received the transcripts approximately two months before his post-conviction petition was filed. He reiterated that he had completed the eighth grade and a few months of the ninth grade before his indictment in this case and had obtained his GED while incarcerated. Petitioner also stated that he had previously missed one year of school because no school would accept him due to some other juvenile court proceedings.

Virgil Clay, Petitioner's father, testified that he never saw a letter from trial counsel indicating that Petitioner's transcripts could be picked up by a family member. He sometimes saw trial counsel during court proceedings for Mr. Clay's other son, but trial counsel did not mention Petitioner's case. Mr. Clay testified that he visited trial counsel's office four or five times to get "some kind of paperwork" on Petitioner's case and that he was "specific about the transcripts." He said that trial counsel indicated that the transcripts were on his desk, but trial counsel did not tell him to pick them up. Mr. Clay said that trial counsel did not know where to "send the papers" because trial counsel did not know Petitioner's location. Mr. Clay testified that trial counsel gave three or four excuses for not getting paperwork to Petitioner. He did not know how Petitioner obtained copies of his transcripts.

At the conclusion of the tolling hearing, the post-conviction court noted that Petitioner's situation was "unfortunate" and that he was arrested and indicted for first-degree murder at the age of sixteen and that he was twenty-two or twenty-three with an eighth-grade education "just a couple of months into his 9th grade year" when he began his post-conviction proceedings. The post-conviction court further concluded:

> And I think it's real important that - - that great consideration be taken for his - - his age. And - - and not to say that he, - - he's a, for lack of a better term, a dumb young man, because he's not, but he was 22 or 23, and at the time he had an 8th grade education. And he testified to that he had done just a couple of months into his 9th grade year.

When [trial counsel] wrote these letters - - wrote this letter to inform [Petitioner] that he was ending his representation, it says - - it says here that he's filed both the appeal, he was denied the appeal, and he's requested review from the - - from the [s]upreme [c]ourt. But of course, it's left up to the Court's discretion.

And then he goes on to further state that [Petitioner's] file is at his office. It's too large to mail. He doesn't get - - he's not able to bill for the mailing, and so therefore, it's left at his office if someone wants to come pick it up. But this letter doesn't go any further into now what's the next step for [Petitioner]. And clearly, that's what [Petitioner] was looking for. And he was looking for that in all of these requests when - - when he - - he states what's my next - - what's my next step? What's my next step?

There are some timing issues. This whole thing of course is a timing issue, but we've discerned in this hearing that [Petitioner] finally got transcripts two months prior to the deadline - - the filing deadline for this post-conviction petition to be filed.

The State makes - - makes the argument that [Petitioner] knew what his remedy was, that he - - he knew he had a deadline coming. And that's true. He - - he knew enough to get to the law library where he was housed to talk to some people. And he needs to file a post[-] conviction, and his post[-]conviction has to be filed within a year.

However, it's that same lack of education and - - and lack of familiarity with this system and the - - the details of this system that come into play. Because [Petitioner] was under the impression that he had a year from conviction date or motion for new trial date. Whichever one, it was the wrong deadline.

So, yes, we - - we see in his communications that he recognizes there is a deadline that he's - - that he's working with. But in his - - his quest to - - to do what he knows he's supposed to do, he's still working with the wrong deadline. It's a reason why we have attorneys to make sure these deadlines are - - are met and met in a timely fashion.

I'm also, I don't know, puzzled by this letter that Ms. Beverly Sharpe from the [BPR] sends to [Petitioner], dated September 29, 2015, because I was confused when I read it. I don't quite know what it means and I'm not certain what Ms. - - Ms. Sharpe is responding to.

And maybe she didn't understand what [Petitioner] was requesting or what he was trying to tell her, but if she recognizes that it's a post[-]conviction

that he needs to file, then I'm not sure why he just couldn't tell her - - why she just couldn't relay to him that you have a date from the - - the highest court's ruling to file a post[-] conviction. But that's not what she does in this. And this letter is probably the most confusing of this whole file.

Applying the - - the two standards of the *Whitehead* case, the first one being the requirement - - excuse me, the - - that the defendant or petitioner in this matter was pursuing reasonable due diligence in trying to - - trying to get some answers. I believe we've met that. I believe [Petitioner] has met that in the fact that he's - - he sent several letters to his attorney, to the [BPR], to the Clerk, just requesting help, requesting deadlines.

There's also another letter that I - - I feel compelled to mention, later dated November 5, 2015. And I believe it's - - I believe it's attached to this October 8, 2015 batch of letters. But it's addressed to [trial counsel], and I believed it was afforded to - - it was forwarded to [trial counsel] through the [BPR]. And in it, [Petitioner] states that he received his transcripts, thank you dearly, but he has a few questions.

And he has three questions out here clearly, clearly defining what the issues may be. If you withdrew from my case in February, why haven't I been back to court? And - - and that's letting us know that he doesn't know how he can get another lawyer to help him with the next step.

And then he doesn't know what the next step is. He's not sure at this point, but he knows he's got to file something, and he's talked to enough people in the prison to know, Do I need to file something pro se. And then the last one states, What's the deadline on my next appeal? What is my next appeal? So I - - I think that's the most telling in the fact that - - that he was pursuing this diligently. And the ordinary circumstances are - - are those ones that we - - we've already stated.

First of all, the fact that he - - he had at the time an 8th grade education, that there was several miscommunications. And I think the most telling of those is the one from the [BPR], the fact that we're talking about such a serious case. This is a first degree murder where [Petitioner] was sentenced to life. I just believe due process and fundamental fairness requires tolling of the statute.

Thereafter, Petitioner, through counsel, filed an amended post-conviction petition, and a hearing was held over several different dates during which Petitioner's mother, father, uncle, and Youth Services Bureau probation counselor all testified. Additionally, trial counsel, Petitioner, and retired Memphis Police officers Lieutenant Eric Freeman and

Inspector Joe Stark also testified.[3] The post-conviction court denied Petitioner's post-conviction petition finding that trial counsel was deficient but that Petitioner failed to prove that he was prejudiced and "that the mandatory life sentence imposed violated Petitioner's Eighth Amendment Rights against cruel and unusual punishment but denie[d] the Petitioner a sentencing hearing pursuant to the ruling in *State v. Tyshon Booker*, No. E2018-01439-SC-R11-CD (Nov. 18, 2022)."

## ANALYSIS

On appeal, Petitioner argues that the post-conviction court correctly determined that the statute of limitations should be tolled for his untimely petition because he diligently pursued his petition after being abandoned by trial counsel. He further contends that he received ineffective assistance of counsel at trial. The State responds that the post-conviction court erred by finding that extraordinary circumstances prevented Petitioner from timely filing his petition and denying the State's motion to dismiss the petition as untimely. The State further argues that Petitioner failed to show that he received ineffective assistance of counsel at trial.

Post-conviction relief is available when a "conviction or sentence is void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." T.C.A. § 40-30-103. A person in custody under a sentence of a court of this state must petition for post-conviction relief "within one (1) year of the date of the final action of the highest state appellate court to which an appeal is taken or, if no appeal is taken, within one (1) year of the date on which the judgment became final[.]" *Id.* § 40-30-102(a). "The statute of limitations shall not be tolled for any reason, including any tolling or saving provision otherwise available at law or equity." *Id.* Moreover, "[t]ime is of the essence of the right to file a petition for post-conviction relief or motion to reopen established by this chapter, and the one-year limitations period is an element of the right to file the action and is a condition upon its exercise." *Id.* If it plainly appears on the face of the post-conviction petition that the petition was filed outside the one-year statute of limitations or that a prior petition attacking the conviction was resolved on the merits, the post-conviction court must summarily dismiss the petition. *Id.* § 40-30-106(b). "The question of whether the post-conviction statute of limitations should be tolled is a mixed question of law and fact that is . . . subject to de novo review." *Bush v. State*, 428 S.W.3d 1, 16 (Tenn. 2014) (citing *Smith v. State*, 357 S.W.3d 322, 355 (Tenn. 2011)).

Tennessee Code Annotated section 40-30-102(b) provides three exceptions to the statute of limitations for petitions for post-conviction relief: (1) claims based on a final ruling of an appellate court establishing a constitutional right not recognized as existing at

---

[3] Because we dismiss Petitioner's post-conviction petition as untimely, we will not summarize the testimony presented at the post-conviction hearing.

- 9 -

the time of trial and given retroactive effect by the appellate courts; (2) claims based upon new scientific evidence establishing that the petitioner is actually innocent of the conviction offense; and (3) claims seeking relief from a sentence that was enhanced because of a previous conviction and the previous conviction was later held to be invalid. T.C.A. §§ 40-30-102(b)(1)-(3).

In addition to the statutory exceptions, our supreme court has held that due process principles may require tolling the statute of limitations. *See Whitehead*, 402 S.W.3d at 622-23. To date, our supreme court "has identified three circumstances in which due process requires tolling the post-conviction statute of limitations": (1) when the claim for relief arises after the statute of limitations has expired; (2) when the petitioner's mental incompetence prevents him from complying with the statute of limitations; and (3) when the petitioner's attorney has committed misconduct. *Id.* at 623. To succeed upon such a claim, a petitioner must show "(1) that he or she ha[d] been pursuing his or her rights diligently, and (2) that some extraordinary circumstance stood in his or her way and prevented timely filing." *Id.* at 631 (citing *Holland v. Florida*, 560 U.S. 631, 648-49 (2010)). The first prong "does not require a [petitioner] to undertake repeated exercises in futility or to exhaust every imaginable option, but rather to make reasonable efforts. . . . Moreover, the due diligence inquiry is an individualized one that must take into account the conditions of confinement and the reality of the prison system." *Id*. (quotations omitted) (quoting *Downs v. McNeil*, 520 F.3d 1311, 1323 (11th Cir. 2008)). "[T]he second prong is met when the [petitioner's] attorney of record abandons the [petitioner] or acts in a way directly adverse to the [petitioner's] interests, such as by actively lying or otherwise misleading the [petitioner] to believe things about his or her case that are not true." *Id*. In *Whitehead*, the court cautioned that due process tolling "must be reserved for those rare instances where – due to circumstances external to the party's own conduct – it would be unconscionable to enforce the limitation period against the party and gross injustice would result." *Id*. at 631-32 (quotations omitted) (quoting *Harris v. Hutchinson*, 209 F.3d 325, 330 (4th Cir. 2000)).

We agree with the State that Petitioner in this case failed to present sufficient facts to justify a tolling of the one-year statute of limitations. Contrary to Petitioner's assertions in his brief, the evidence presented at the tolling hearing does not demonstrate that Petitioner was abandoned by trial counsel or that he diligently pursued his post-conviction petition.

Although Petitioner wrote several letters to trial counsel, the BPR, and the court clerk requesting help with his post-conviction proceedings, Petitioner was aware that he needed to file a post-conviction petition and that he had a deadline to do so. Petitioner admitted at the tolling hearing that he knew trial counsel had withdrawn from his case in February of 2015, after Petitioner's Rule 11 application to the supreme court was denied on January 15, 2015. Trial counsel's February 9, 2015 letter to Petitioner advised him that his application to appeal was denied by the supreme court and that trial counsel's

representation had ended. While Petitioner testified that he did not receive trial counsel's letter, Petitioner's October 8, 2015 complaint to the BPR clearly indicated that Petitioner had in fact received trial counsel's letter. The February 9, 2015 letter further indicated that a family member could pick up Petitioner's file, which was "quite large and would be burdensome to mail[,]" from trial counsel's office and that Petitioner had been provided with discovery prior to his trial and that the only things Petitioner was missing were his "trial transcripts and record." Petitioner's trial transcripts and file were not picked up from trial counsel's office by any family member; however, trial counsel eventually mailed the materials to Petitioner following Petitioner's letter to the BPR requesting that they be sent to him. Petitioner admitted that he received his trial transcripts at least two months prior to the expiration of the statute of limitations.

In his letters to the BPR, Petitioner indicated that he was "behind" on his petition due to a "lack of paper work" and that he was unable to argue his claims without his transcripts. However, "having one's case file is not a [prerequisite] to the filing of a post-conviction petition." *State v. Weidekamp*, No. M2020-00736-CCA-R3-PC, 2021 WL 1345567, at *3 (Tenn. Crim. App. Apr. 12, 2021); *see also Carino v. State*, No. E2018-00775-CCA-R3-PC, 2018 WL 5780231, at *5 (Tenn. Crim. App. Nov. 2, 2018) (finding that "[t]he Petitioner's case file is not a condition precedent to his filing of his petition for post-conviction relief"); *Davis v. State*, No. M2016-02512-CCA-R3-PC, 2017 WL 2257704, at *4 (Tenn. Crim. App. May 23, 2017) (noting that "even if the Petitioner had not received his case file by the deadline for filing his post-conviction petition, the Petitioner could have timely filed his post-conviction petition before his case file arrived and later amended the petition").

We acknowledge Petitioner's testimony that he was confused about the deadline to file his post-conviction petition, and his letters contain several requests for information on the deadline to file his petition. However, this court has stated that "a petitioner's personal ignorance of post-conviction procedures, 'even when alleged to stem from an attorney's negligent failure to render advice to the petitioner, does not toll the running of the statute' of limitations." *Jacobs v. State*, No. M2009-02265-CCA-R3-CD, 2010 WL 3582493, at *3 (Tenn. Crim. App. Sept. 15, 2010) (quoting *State v. Phillips*, 904 S.W.2d 123, 124 (Tenn. Crim. App. 1995)). Petitioner testified at the tolling hearing that he had inmates helping with the post-conviction petition, "who's been there over 20 years and legal advisors." When asked about getting assistance from inmates, Petitioner replied: "You go to the law library and find someone who [has] been doing law work, or you talk to an inmate around and they'll point you to the right person. That's how I found out about my post[-]conviction and stuff like that." He further testified that someone explained "post-conviction petitions" to him and began helping him with the process.

Trial counsel in this case did not abandon Petitioner as Petitioner alleges in his brief. He complied with Tennessee Supreme Court Rule 14 by advising Petitioner that Petitioner's case appeal to the supreme court had been denied, that his case had thus

concluded, and that his representation had ended.  *See Montgomery v. State*, No. M2022-00780-CCA-R3-PC, 2023 WL 5341132, at * 4 (Tenn. Crim. App. Aug. 21, 2023) (finding that "trial counsel complied with Tennessee Supreme Court Rule 14, advised the Petitioner her case had concluded and of the deadline to file an appeal to the Tennessee Supreme Court, and properly withdrew from representation."), *perm app. denied* (Tenn. Jan. 11, 2024).  Trial counsel did not act in any way directly adverse to Petitioner's interest by actively lying to or misleading Petitioner about his case.  Petitioner has failed to show that he was "prohibited from timely filing his petition for post-conviction relief by circumstances outside of his control."  *Watts v. State*, No. M2019-00849-CCA-R3-PC, 2020 WL 5757618, at *3 (Tenn. Crim. App. Sept. 28, 2020); *id*.  At the conclusion of the majority's opinion in *Whitehead*, our supreme court stated,

> As we recently noted, "[i]n every case in which we have held the statute of limitations is tolled, the pervasive theme is that circumstances *beyond a petitioner's control* prevented the petitioner from filing a petition for post-conviction relief within the statute of limitations."  *Smith v. State*, 357 S.W.3d at 358.  This observation holds true today.

402 S.W.3d at 634 (emphasis in original); *see also Watts*, 2020 WL 5757618, at *3.  Because there are insufficient facts in this case to justify due process tolling of the statute of limitations, the post-conviction court erred by denying the State's motion to dismiss Petitioner's post-conviction petition as untimely.  We, therefore, reverse the post-conviction court's denial of the State's motion to dismiss the petition as untimely.

## CONCLUSION

Based on the foregoing, we conclude that the petition for post-conviction relief was untimely and that Petitioner has not demonstrated that the statute of limitations should be tolled on due process grounds.  Therefore, we reverse the post-conviction court's denial of the State's motion to dismiss the petition as untimely.

_____
JILL BARTEE AYERS, JUDGE